# EXHIBIT B

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2025-May-09  15:46:33
60CV-25-4975
C06D03 : 13 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

**DERRANCE HARRIS**

        **Plaintiff,**

**v.**

**CREDIT & DEBT dba**
**CREDIT SWAG VENTURES INC**
**EMPIRE INSURANCE GROUP**
**NATIONAL DEBT RELIEF**

        **Defendants.**

**Case No.:**

**COMPLAINT**

**JURY DEMAND**

### PLAINTIFF'S COMPLAINT FOR DAMAGES PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. 227, ET SEQ. AND ARKANSAS DECEPTIVE TRADE PRACTICES ACT

Comes now the Plaintiff, Derrrance Harris, and for his Complaint for Damages and Injunctive Relief against Defendant, states:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Derrance Harrid, is and was at all relevant times, a resident of Pulaski County, Arkansas.

2. Defendant, Credit & Debt-Credit Swag Ventures Inc, Advisors hereafter), is a California corporation with its company office in Temecula CA, which advertises and transacts business in the state of Arkansas, including Pulaski County.

**Credit & Debt-Credit Swag Ventures Inc**;  may be served

through its registered agent; REGISTERED AGENT SOLUTION., 43454

Bussiness Park Drive Temecula CA.USA;.

   3. Defendant, Empire Insurance Group Inc  ,

Empire Insurance Group Inc  " hereafter), is a Minnesota corporation with an

office in North Branch MN.; which advertises and transacts business in the

state of Arkansas, including Pulaski County. Empire Insurance Group Inc;

 may be served through; CHRISTINE R LARSON, 6063 MAIN Street, Suite

A North Branch MN 55056. Defendant, National Debt Relief, hereafter) is a

NEW YORK corporation , with an office in New York; which advertises and

transacts

bussiness in Arkansas.

   4. This Court has jurisdiction over this matter and the parties hereto
pursuant

to Ark.Code Ann. § 16-4-101 and venue is proper pursuant to Ark. Code Ann. § 16-55-
213.

   5. This Court has jurisdiction over this matter and the parties hereto
pursuant

to Ark. Code Ann. § 4-106-202(c)(1).

   6. This Court has personal jurisdiction over the Defendant

pursuant to Ark. Code Ann. § 4-106-202(b).

   7. The TCPA specifically states that this Court shall have

jurisdiction over violations of 47 U.S.C. § 227(b), pursuant to 47 U. S. C.

§227(b)(3), (c)(5). Arkansas Law specifically grants jurisdiction over this

matter and Defendant pursuant to A.C.A. § 4-88-113(d)(3) and A.C.A. § 4-

106-202(b) as the Defendant is subject to liability under A.C.A. § 4-106-202
and A.C.A. § 4-88-113(f).

## BACKGROUND
### The Telephone Consumer Protection Act

8. In 1991, Congress enacted the TCPA to regulate the
explosive growth of the telemarketing industry.  In so doing, Congress
recognized that "[u]nrestricted telemarketing… can be an intrusive invasion
of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-
243. §2(5)(1991)(47 U.S.C. § 227).

9. The National Do Not Call Registry allows consumers to
register their telephone number and thereby indicate their desire not to receive
telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).  A
listing on the Registry "must be honored indefinitely, or until the registration
is cancelled by the consumer or the telephone number is removed by the
database administrator." *Id*.

•       The TCPA and implementing regulations prohibit the
initiation of telephone solicitations to residential telephone subscribers to
the Registry. 47 U.S.C. § 227; 47 C.F.R. § 64.1200(c)(2).

### Automated Telemarketing Calls are Prohibited by the TCPA

10. The TCPA makes it unlawful "to make any call (other
than a call made for emergency purposes or made with the prior express
consent of the called party) using an automatic telephone dialing system or an
artificial or prerecorded voice… to any telephone number assigned to a…

cellular telephone service." See 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA

provides a private cause of action to persons who receive calls in violation of

47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

11. "Voluminous consumer complaints about abuses of

telephone technology - for example, computerized calls dispatched to

private homes - prompted Congress to pass the TCPA." *Mims v. Arrow*

*Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

12. In enacting the TCPA, Congress intended to give

consumers a choice as to how creditors and telemarketers may call them and

made specific findings that "[t]echnologies that might allow consumers to

avoid receiving such calls are not universally available, are costly, are

unlikely to be enforced, or place an inordinate burden on the consumer.

TCPA, Pub.L. No. 102- 243, § 11. Toward this end, Congress found that:

> "[b]anning such automated or prerecorded telephone calls to the
>
> home, except when the receiving party consents to receiving the call
>
> or when such calls are necessary in an emergency situation affecting
>
> the health and safety of the consumer, is the only effective means of
>
> protecting telephone consumers from this nuisance and privacy."

*Id*. at § 12; see also *Martin v. Leading Edge Recovery Solutions,*

*LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing

Congressional findings on TCPA's purpose).

## FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

13. Plaintiff is a resident of Pulaski County, Arkansas.

14. Plaintiff is the authorized user of and controls his personal cell phone number: (501) 658-****.

15. Defendant Credit & Debt , offers services that offers debt services for indivdiuals who are in debt with credit cards.

16. Defendant ,**EMPIRE INSURANCE GROUP** Inc. offers various levels of insurance for auto and other options. , Defendant **NATIONAL DEBT RELIEF** offers debt services for indivdiuals who are in debt.

17. Defendants, use, direct, or employ telemarketing to promote and market its/their products/services.

18. On at least ten (10) occasions, between the dates of December 12, 2024, December 31, 2024, February 14, 2025, March 26, 2025, Defendants placed or caused to be placed automatically-dialed telemarketing calls to Plaintiff's personal cellular telephone number, (501) 658-****, some of which were placed using fraudulent, "spoofed" phone numbers.

19. Ten (10) of the calls were placed to Plaintiff on December  12 2024 thru March 26, 2025 , using the Caller ID,  see Exhibits

20. The Callers usually identified themselves as being with other insurance psedonyms, among other pseudonyms.

21. These pseudonyms, along with fraudulent CIDs, venders, were used by Defendants' agents to avoid liability for illegal telemarketing.

22. The Callers attempted to gather information from Plaintiff which would qualify him for health insurance.

23. Plaintiff has never gave a written conscent, and has never sought information, opt in to be contacted by Defendants or anyone else prior to receiving defendantss telemarketing calls.

24. Each of the other calls contained one or more of the following items:

- The callers mentioned am I Looking for health insurance.

- The calls were placed from identical or substantially similar CIDs.

25. The callers did not seem to know Plaintiff's name or any of his personal information, indicating that the calls were placed using automated dialing equipment or software and that the calls were made at random.

26. On April 9, 2025, Plaintiff served Defendants " Credit & Debt" with an Affidavit/Complaint Demand Letter Notice Intent To File Suite For Violations of The Consumer Proection Act, outlining the violations and requested Defendants; and to  rebutt affidavit under notary seal, and failure to do so by alotted time would resoult in default judgement aginst Credit & Debt" . See Exhbirt A attaached here to Affidavit Demand Lettter

27. Defendnats ,"Credit & Debt" "; failed to rebutt affidavit under notary seal, and Affidavit of Default Judgemnt was served on Credit & Debt" . see Exhbit B

28. That the Affidadvit of Default served upon the

defendants;

Credit & Debt" ; consituted their agreement to the violations and damages

and relife saugth in said affidavit.

29. Plaintiff's on April 9,2025 serve the Defendant

"Empire Insurance Company was served an Affidavit/Federal Complaint For

Viloations of the Telephone  Consumer Protections Act/Demand Letter Intent

To Sue Notice. see Exhbit.F

30. That Defendants "Empire Insurance Company "was give

alotted time to rebutt the affidavit of notary seal and defeants filed to rebutt

and was served with an Affdiavit of Default . see Exhbit G.

31. That the Affdiavit of Default against "Empire Insurance

Company" confirmed their violations were true and correct as outline therein.

32. Plaintiff's on March 26,2025 serve the Defendant

"National Debt Relief was served an Affidavit/Federal Complaint For

Viloations of the Telephone  Consumer Protections Act/Demand Letter Intent

To Sue Notice. see Exhbit.H

33. That Defendants "~~Empire Insurance Company~~ National Debt Relief ny "was give

alotted time to rebutt the affidavit of notary seal and defeants filed to rebutt

and was served with an Affdiavit of Default . see Exhbit I.

34. That the Defendants do not send Plaintff as requsted a

copy of their Do Not Call Policy, nor has done til this present of filing

complaint herein.

35. Plaintiff has no business relationship with the Defendants and never requested, prompted, or consented to these calls and had no knowledge of the Defendants prior to the calls being placed. The calls were placed to Plaintiff's personal cellular phone for no legitimate purpose other than to solicit business for Defendants.

36. These ten (10) calls (at least) were placed using automated dialing equipment as evidenced by generalized marketing calls which were placed at random, prerecorded marketing messages and/or long, silent pauses after answering, and/or computerized "bloop" sounds, followed by the call being transferred to a salesperson.

37. At no time did Plaintiff give written consent to be called by Defendant or its agents. Any perceived interest during these calls was a misinterpretation of Plaintiff's efforts to identify the caller(s).

38. Prior to, during and following these calls, Plaintiff did not do any business with Defendants, nor did he provide his cellular telephone number. Neither Defendants nor their agents had Plaintiff's prior express written consent to make these calls.

39. Plaintiff's personal cell phone number, (501) 658-****, has been registered with the National Do Not Call Registry since October 5, 2024; prior to the calls. see Exhbit 4

40. Plaintiff received these ten (10) calls/ text (at least) on his private cellular telephone, as defined and set forth in 47 C.F.R. § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with

Puretalk as a cellular telephone number and is used for personal, lawful purposes.

see Exhibit E

       41. These telemarketing solicitations constitute "calls" under the TCPA that were not for emergency purposes.

       42. Plaintiff suffered actual damages, including but not limited to invasion of privacy, depletion of cell phone battery, wasting of personal time and cellular minutes/data, and preventing Plaintiff from using his personal telephone for lawful purposes.

       43. Upon information and belief, Defendant placed or had control over the placement of each of the ten (10) known calls to the Plaintiff's cell phone. Defendants had substantial control over its agents, including which services were sold, how the services were sold, the price of the services, the call center scripts used to sell the services, the locations targeted, the phone numbers being called, marketing material being used, training of call center employees, payment of commissions, prerecorded messages, maintenance of call centers and call center equipment, among other decisions in the telemarketing process.

       44. These calls were placed or caused to be placed by Defendants to an Arkansas resident, the Plaintiff, who was known by the Defendants or its agents to be an Arkansas resident.  The calls described herein were aimed at Arkansas and its residents to advertise products and services to those residents.

45. Each of these ten (10) or more calls were made by or on behalf of Defendants.

46. These telephone sales calls and/or "robocalls" violated 47 U.S.C. § 227(b)(1)(A), 47 U.S.C. § 227(c)(3)(F), 47 U.S.C. § 227(e), 47 CFR 64.1200(d)(1), 47 CFR 64.1200(d)(3), 47 CFR 64.1200(a)(1)(iii), 47 CFR 64.1200(a)(1), and 47 CFR 64.1200(c)(2).

47. Most, if not all, of these calls were made in violation of Ark. Code Ann. § 4-88- 107 (a)(11)(A) because Defendant employed a "spoofed" phone number. The callers utilized Arkansas area codes or generated phone numbers and/or area codes in an attempt to fraudulently conceal the identity of the callers or to cause Plaintiff to answer the calls by deception in order to more effectively market their products.

48. These calls were placed as part of a telemarketing campaign directed and commissioned by Defendants. The purpose of this campaign was to generate business for Defendants. Upon information and belief, Defendants are contracted and agreed to pay a commission for each successfully signed client.

## CAUSES OF ACTION

### COUNT 1- Negligent Violation of the TCPA's "Robocall" Prohibition, 47 U.S.C. § 227 et seq.

49. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

50. As a result of Defendants' and/or Defendants' agents' negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks $500.00 in statutory damages, for each and every

violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

51. Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### COUNT 2- Knowing or Willful Violation of the TCPA's "Robocall" Prohibition, 47

### U.S.C.§ 227 et seq.

52. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

53. As a result of Defendants' and/or Defendants' agents' knowing or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

54. Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### COUNT 3- Negligent Violation of the TCPA's "Sales Call" Prohibition,

### 17.

### U.S.C. § 227 et seq.

55. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

56. As a result of Defendants' and/or Defendants' agents' negligent violations of 47 U.S.C. § 227(c)(3)(F) and 47 CFR 64.1200(c)(2), Plaintiff seeks $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

57. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

**COUNT 4- Knowing and/or Willful Violation of the TCPA's "Sales Call"**

**Prohibition, 17. U.S.C. § 227 et seq.**

58. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

59. As a result of Defendants' and/or Defendants' agents' knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F) and 47 CFR 64.1200(c)(2), Plaintiff seeks treble damages, as provided by statute, up to $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

60. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## <u>DAMAGES AND RELIEF SOUGHT</u>

61. For awards of $500.00 for each negligent violation as set forth in counts 1-4;

62. For awards of $1,500.00 for each knowing and/or willful violation as set forth in counts 1-4.

- Total statutory damages: **<u>$28,000.00</u>** (five calls each consisting of: "sales call" and "RoboCall" violations, with treble damages for each.)

63. Plaintiff relied on Defendants' use of "spoofed" numbers when he answered the above- described calls and subsequently suffered actual financial losses. Pursuant to 4-88-113(f)(1)(A) and 4-88-113(f)(3), Plaintiff is entitled

to the recovery of damages and reasonable attorney's fees should he retain an attorney.

64. Injunctive relief, as set forth in Counts 1-4, against Defendants and each of them to prevent future wrongdoing;

65. Pre and post judgment interest at the maximum legal rate; and

66. All such other and further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands a jury trial as to all issues so triable.

## REQUEST FOR ADMISSION

Plaintiff demands and request for admissions propondent to to the Defendants.

## CONCLUSION

**WHEREFORE**, Plaintiff prays for the above-mentioned remedies, including but in no way limited to an award of the costs, interest, and fees incurred in connection with this matter, request for admission before Defendants can move case to any other court, and for all other just and proper relief to which Plaintiff may be entitled. Plaintiff reserves the right to add additional calls, claims, or parties as they may arise through further factual investigation and discovery.

Respectfully Submitted,

7401 Colonel Glenn Rd, #45881
Little Rock, AR, 72214
(501)658-2063
cozplugn@gmail.com

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2025-Mar-12  13:41:42
60CV-25-2684
C06D06 : 12 Pages

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

| | |
|---|---|
| **DERRANCE HARRIS** | **Case No.:** |
| **Plaintiff,** | **COMPLAINT** |
| **v.** | **JURY DEMAND** |
| **US HEALTH GROUP LLC, d.b.a US HEALTH ADVISORS LLC, CENTERFIELD** | |
| **Defendants.** | |

## PLAINTIFF'S COMPLAINT FOR DAMAGES PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. 227, ET SEQ. AND ARKANSAS DECEPTIVE TRADE PRACTICES ACT

Comes now the Plaintiff, Derrrance Harris, and for his Complaint for

Damages and Injunctive Relief against Defendant, states:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Derrance Harrid, is and was at all relevant times, a

resident of Pulaski County, Arkansas.

2. Defendant, Us Health Group LCC-Us Health Advisors LLC,

("Us Health Group LCC-Us Health Advisors LLC" hereafter), is a Texas

corporation with its company office in Forth Worth, TX, which advertises and

transacts business in the state of Arkansas, including Pulaski County.

**Us Health Group LCC-Us Health Advisors LLC**;  may be served

through its registered agent; SHARRON A CHAMBERS., 2201 First View,

Leander TX 78641.USA;  300 Burnett Street, Suite 200 Forth Worth TX 76102-2734.USA.

   3. Defendant, Centerfield  , (Centefield" hereafter), is a California corporation with an office in Los Angeles, C.; which advertises and transacts business in the state of Arkansas, including Pulaski County. Centerfield may be served through; LIZETHE ARCE, 12130 Millennium Drive, Suite 600, Los Angeles, CA 90094..

   4. This Court has jurisdiction over this matter and the parties hereto pursuant to Ark.Code Ann. § 16-4-101 and venue is proper pursuant to Ark. Code Ann. § 16-55-213.

   5. This Court has jurisdiction over this matter and the parties hereto pursuant to Ark. Code Ann. § 4-106-202(c)(1).

   6. This Court has personal jurisdiction over the Defendant pursuant to Ark. Code Ann. § 4-106-202(b).

   7. The TCPA specifically states that this Court shall have jurisdiction over violations of 47 U.S.C. § 227(b), pursuant to 47 U. S. C. §227(b)(3), (c)(5). Arkansas Law specifically grants jurisdiction over this matter and Defendant pursuant to A.C.A. § 4-88-113(d)(3) and A.C.A. § 4-106-202(b) as the Defendant is subject to liability under A.C.A. § 4-106-202 and A.C.A. § 4-88-113(f).

## **BACKGROUND**
### **The Telephone Consumer Protection Act**

   8. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing… can be an intrusive invasion of privacy[.]" Telephone

Consumer Protection Act of 1991, Pub. L. No. 102-243. §2(5)(1991)(47 U.S.C. § 227).

9. The National Do Not Call Registry allows consumers to register their telephone number and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

• The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227; 47 C.F.R. § 64.1200(c)(2).

## Automated Telemarketing Calls are Prohibited by the TCPA

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice... to any telephone number assigned to a... cellular telephone service." See 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

11. "Voluminous consumer complaints about abuses of telephone technology - for example, computerized calls dispatched to private homes - prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

12. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102- 243, § 11. Toward this end, Congress found that:

> "[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy."

*Id.* at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

## FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

13. Plaintiff is a resident of Pulaski County, Arkansas.

14. Plaintiff is the authorized user of and controls his personal cell phone number: (501) 658-****.

15. Defendant Us Health Group LCC-Us Health Advisors LLC according to its website, offers Health Benefits for families and indivduals find and enroll in health insurance plans." Seehttps://www.unitedhealthgroup.com/ , *last accessed 3/6/2025.*

16. According to its website, Defendant Centerfield, Inc. offers a Home Services, Bussiness Services, and health Insurance " See *https://www.centerfield.com/ HYPERLINK "http://www.zeroriskcases.com/mass-tort-cases/current-mass-tort-cases/"*, last accessed 3/3/25.

17. Defendants, use, direct, or employ telemarketing to promote and market its/their products/services.

18. On at least five (5) occasions, between the dates of November 13, 2024, Defendants placed or caused to be placed automatically-dialed telemarketing calls to Plaintiff's personal cellular telephone number, (501) 658-****, some of which were placed using fraudulent, "spoofed" phone numbers.

19. Five (5) of the calls were placed to Plaintiff on November 5 - November 13, 2024 , using the Caller ID, ("CID") (704)559-9460, (919)341-9849, and (209)894-1414.

20. The Callers usually identified themselves as being with other insurance psedonyms, among other pseudonyms.

21. These pseudonyms, along with fraudulent CIDs, venders,  were used by Defendants' agents to avoid liability for illegal telemarketing.

22. The Callers attempted to gather information from Plaintiff which would qualify him for health insurance.

23. Plaintiff has never gave a written conscent, and has never sought information, opt in to be contacted by Defendants or anyone else prior to receiving defefendants telemarketing calls.

24. Each of the other calls contained one or more of the following items:

- The callers mentioned am I Looking for health insurance.

- The calls were placed from identical or substantially similar CIDs.

25. The callers did not seem to know Plaintiff's name or any of his personal information, indicating that the calls were placed using automated dialing equipment or software and that the calls were made at random.

26. On February 18, 2025, Plaintiff served Defendants " Us Health Group LCC-Us Health Advisors LLC" with an Affidavit/Complaint Demand Letter Notice Intent To File Suite For Violations of The Consumer Proection Act, outlining the violations and requested Defendants; Us Health Group LCC-Us Health Advisors LLC, for rebutt affidavit under notary seal, and failure to do so by alotted time would resoulf in default judgement aginst Us Health Group LCC-Us Health Advisors LLC. See Exhbirt A attaached here to

27. Defendnats "Us Health Group LCC-Us Health Advisors LLC; failed to rebutt affidavit under notary seal, and Affidavit of Default Judgemnt was served on "Us Health Group LCC-Us Health Advisors LLC. see Exhbit B

28. That the Affidadvit of Default served upon the defendants; Us Health Group LCC-Us Health Advisors LLC; consituted their agreement to the violations and damages and relife saugth in said affidavit.

29. Plaintiff's on March 3, 2025, serve the Defendant "Centerfield an Affidavit/Federal Complaint For Viloations of the Telephone Consumer Protections Act/Demand Letter Intent To Sue Notice. see Exhbit.C

30. That Defendants Centerfield was give alotted time to rebutt the affidavit of notary seal and defeants filed to rebutt and was served with

an Affdiavit of Default . see Exhbit Ọ.

31. That the Affdiavit of Default against Centerfild

confirmed their violations were true and correct as outline therein.

32. That the Defendants do not send Plaintff as requsted a copy of

their Do Not Call Policy, nor has done til this present of filing complaint herein.

33. Plaintiff has no business relationship with the Defendants and

never requested, prompted, or consented to these calls and had no knowledge of the

Defendants prior to the calls being placed. The calls were placed to Plaintiff's

personal cellular phone for no legitimate purpose other than to solicit business for

Defendants.

34. These five (5) calls (at least) were placed using automated dialing

equipment as evidenced by generalized marketing calls which were placed at

random, prerecorded marketing messages and/or long, silent pauses after answering,

and/or computerized "bloop" sounds, followed by the call being transferred to a

salesperson.

35. At no time did Plaintiff give consent to be called by Defendant or

its agents. Any perceived interest during these calls was a misinterpretation of

Plaintiff's efforts to identify the caller(s).

36. Prior to, during and following these calls, Plaintiff did not do

any business with Defendants, nor did he provide his cellular telephone number.

Neither Defendants nor their agents had Plaintiff's prior express written consent to

make these calls.

37. Plaintiff's personal cell phone number, (501) 658-****, has been registered with the National Do Not Call Registry since October 5, 2024; prior to the calls. see Exhbit

38. Plaintiff received these five (5) calls (at least) on his private cellular telephone, as defined and set forth in 47 C.F.R. § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with Puretalk as a cellular telephone number and is used for personal, lawful purposes. see Exhibit

39. These telemarketing solicitations constitute "calls" under the TCPA that were not for emergency purposes.

40. Plaintiff suffered actual damages, including but not limited to invasion of privacy, depletion of cell phone battery, wasting of personal time and cellular minutes/data, and preventing Plaintiff from using his personal telephone for lawful purposes.

41. Upon information and belief, Defendant placed or had control over the placement of each of the five (5) known calls to the Plaintiff's cell phone. Defendants had substantial control over its agents, including which services were sold, how the services were sold, the price of the services, the call center scripts used to sell the services, the locations targeted, the phone numbers being called, marketing material being used, training of call center employees, payment of commissions, prerecorded messages, maintenance of call centers and call center equipment, among other decisions in the telemarketing process.

42. These calls were placed or caused to be placed by Defendants to an Arkansas resident, the Plaintiff, who was known by the Defendants or its agents to be an Arkansas resident. The calls described herein were aimed at Arkansas and its residents to advertise products and services to those residents.

43. Each of these five (5) or more calls were made by or on behalf of Defendants.

44. These telephone sales calls and/or "robocalls" violated 47 U.S.C. § 227(b)(1)(A), 47 U.S.C. § 227(c)(3)(F), 47 U.S.C. § 227(e), 47 CFR 64.1200(d)(1), 47 CFR 64.1200(d)(3), 47 CFR 64.1200(a)(1)(iii), 47 CFR 64.1200(a)(1), and 47 CFR 64.1200(c)(2).

45. Most, if not all, of these calls were made in violation of Ark. Code Ann. § 4-88- 107 (a)(11)(A) because Defendant employed a "spoofed" phone number. The callers utilized Arkansas area codes or generated phone numbers and/or area codes in an attempt to fraudulently conceal the identity of the callers or to cause Plaintiff to answer the calls by deception in order to more effectively market their products.

46. These calls were placed as part of a telemarketing campaign directed and commissioned by Defendants. The purpose of this campaign was to generate business for Defendants. Upon information and belief, Defendants are contracted and agreed to pay a commission for each successfully signed client.

## CAUSES OF ACTION

### COUNT 1- Negligent Violation of the TCPA's "Robocall" Prohibition, 47 U.S.C. § 227 et seq.

47. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

48. As a result of Defendants' and/or Defendants' agents' negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

49. Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## COUNT 2- Knowing or Willful Violation of the TCPA's "Robocall" Prohibition, 47 U.S.C.§ 227 et seq.

50. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

51. As a result of Defendants' and/or Defendants' agents' knowing or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

52. Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## COUNT 3- Negligent Violation of the TCPA's "Sales Call" Prohibition, 17. U.S.C. § 227 et seq.

53. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

54. As a result of Defendants' and/or Defendants' agents' negligent violations of 47 U.S.C. § 227(c)(3)(F) and 47 CFR 64.1200(c)(2), Plaintiff seeks $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

55. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### COUNT 4- Knowing and/or Willful Violation of the TCPA's "Sales Call" Prohibition, 17. U.S.C. § 227 et seq.

56. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

57. As a result of Defendants' and/or Defendants' agents' knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F) and 47 CFR 64.1200(c)(2), Plaintiff seeks treble damages, as provided by statute, up to $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

58. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### <u>DAMAGES AND RELIEF SOUGHT</u>

59. For awards of $500.00 for each negligent violation as set forth in counts 1-4;

60. For awards of $1,500.00 for each knowing and/or willful violation as set forth in counts 1-4.

- Total statutory damages: **<u>$28,000.00</u>** (five calls each consisting of: "sales call" and "RoboCall" violations, with treble damages for each.)

61. Plaintiff relied on Defendants' use of "spoofed" numbers when he answered the above- described calls and subsequently suffered actual financial losses. Pursuant to 4-88-113(f)(1)(A) and 4-88-113(f)(3), Plaintiff is entitled to the recovery of damages and reasonable attorney's fees should he retain an attorney.

62. Injunctive relief, as set forth in Counts 1-4, against Defendants and each of them to prevent future wrongdoing;

63. Pre and post judgment interest at the maximum legal rate; and

64. All such other and further relief as the Court deems proper.

## **JURY DEMAND**

Plaintiff demands a jury trial as to all issues so triable.

## **CONCLUSION**

**WHEREFORE**, Plaintiff prays for the above-mentioned remedies, including but in no way limited to an award of the costs, interest, and fees incurred in connection with this matter, and for all other just and proper relief to which Plaintiff may be entitled. Plaintiff reserves the right to add additional calls, claims, or parties as they may arise through further factual investigation and discovery.

Respectfully Submitted,

7401 Colonel Glenn Rd, #45881
Little Rock, AR, 72214
(501)658-2063
cozplugn@gmail.com